UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| LSREF2 BARON, LLC and | ) | |
| LSREF2 BARON2, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.: 3:13-CV-514-TAV-HBG |
| | ) | |
| T.J. COLONY PARK PARTNERSHIP, | ) | |
| COLONY PARK III GENERAL PARTNERSHIP, | ) | |
| JOHN V. MCBRIDE, G. TODD JOHNSON, | ) | |
| ROGER M. MOORE, JR., and | ) | |
| CLAUDIA LOY, f/k/a CLAUDIA RAGSDALE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| T.J. COLONY PARK PARTNERSHIP, | ) | |
| COLONY PARK III GENERAL PARTNERSHIP, | ) | |
| JOHN V. MCBRIDE, G. TODD JOHNSON, and | ) | |
| CLAUDIA LOY, f/k/a CLAUDIA RAGSDALE, | ) | |
| | ) | |
| Counter-Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LSREF2 BARON , LLC and | ) | |
| LSREF2 BARON2, LLC, | ) | |
| | ) | |
| Counter-Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

This civil action is before the Court on counter-defendants' Motion to Dismiss

Counter-Complaint [Doc. 20], counter-defendants' Motion to Dismiss First Amended

Counter-Complaint [Doc. 27], and counter-plaintiffs' Motion to Amend First Amended

Counter-Complaint and to File Second Amended Complaint [Doc. 33]. The motions

have been fully briefed [*See* Docs. 21, 26, 28, 34, 35, 36].  Upon consideration of the parties' arguments and the relevant law, the Court finds that oral argument is not needed to dispose of the motions and that counter-defendants' Motion to Dismiss Counter-Complaint [Doc. 20] shall be denied as moot, that counter-defendants' Motion to Dismiss First Amended Counter-Complaint [Doc. 27] shall be granted in part and denied in part as moot, and counter-plaintiffs' Motion to Amend First Amended Counter-Complaint and to File Second Amended Complaint [Doc. 33] shall be granted in part and denied in part.

## I.    Background[1]

In 2003, T.J. Colony Park Partnership ("T.J. Colony") and Colony Park III General Partnership ("Colony Park III") borrowed money from Regions Bank ("Regions"), as evidenced by a series of notes, guarantees, and deeds of trust (the "loan documents") [Doc. 33-1 (Second Amended Counter-Complaint) ¶ 2].[2]  The deeds of trust secured indebtedness with property in Knox County, Tennessee known as the T.J. Colony Property and the Colony Park III Property, in favor of Regions's trustee [*Id.* ¶ 3].

On or about July 22, 2011, LSREF2 Baron Trust 2011 acquired a portion of Regions's interest under the loan documents, including the deed of trust on the T.J. Colony Property [*Id.* ¶ 4].  Then, on or about September 30, 2011, LSREF2 Baron Trust 2011-2 acquired Regions's remaining interest under the loan documents, including the

---

[1] The Court takes counter-plaintiffs' factual allegations as true.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that "when ruling on a defendant's motion to dismiss, a judge must accept as true all the factual allegations contained in the complaint." (citations omitted)).

[2] Given that the opposition to counter-plaintiffs' motion to amend is based upon futility, the Court will draw the pertinent facts from the proposed second amended counter-complaint [Doc. 33-1].

2

deed of trust on the Colony Park III Property [*Id.* ¶ 5]. On or about May 30, 2012, LSREF2 Baron, LLC and LSREF2 Baron 2, LLC ("the LLCs" or "counter-defendants") claim they acquired all rights, title, and interest under the loan documents, but they never notified T.J. Colony or Colony Park III of this alleged assignment and no such assignment was recorded [*Id.* ¶ 6]. Counter-plaintiffs dispute that the LLCs acquired rights, title, and interest under the loan documents at this time [*Id.* ¶¶ 59–61].

Counter-plaintiffs assert that LSREF2 Baron Trust 2011 and LSREF2 Baron Trust 2011-2 (the "Trusts") were established by Lone Star Funds, a firm that acquires distressed debt and equity assets [*Id.* ¶¶ 7–8]. When the Trusts obtained the loan documents, counter-plaintiffs allege they were acting for the purpose of obtaining distressed debt at a discount and deemed the notes to be in default [*Id.* ¶¶ 9–11]. And, according to counter-plaintiffs, at the time the LLCs purportedly obtained the loan documents, they were acting for the purpose of obtaining distressed debt at a discount, and the notes had been deemed to be in default [*Id.* ¶¶ 12–14].

On February 29, 2012, the 2011 property taxes were due on the T.J. Colony and Colony Park III properties [*Id.* ¶ 15]. On April 4, 2012, the LLCs claim they sent notice of default for non-payment of these taxes, but T.J. Colony and Colony Park III did not receive the notices [*Id.* ¶¶ 16–17]. Then, by letters dated May 2 and May 24, 2012, the Trusts notified T.J. Colony and Colony Park III that the loans were in default for non-payment of the 2011 property taxes [*Id.* ¶ 18]. The May 24 letter also asserted default because the May 15, 2012, payments under the loan documents were late, but counter-

3

plaintiffs assert that these payments were made on May 29, 2012 [*Id.* ¶ 19]. Counter-plaintiffs further assert that T.J. Colony and Colony Park III offered to reimburse the 2011 taxes that the Trusts paid, but the Trusts refused to accept the payment as cure for default, or to consider any alternative resolution [*Id.* ¶¶ 19–24].

Because of the repeated communications from the Trusts asserting their interests, T.J. Colony and Colony Park III believed that the Trusts were the holders of the loan documents [*Id.* ¶ 26]. On June 19 and 25, 2012, T.J. Colony and Colony Park III requested full pay-off amounts from the Trusts [*Id.* ¶ 27]. On June 21, 2012, the Trusts gave notice of their intent to foreclose on the properties and conduct sales by the substitute trustee in twenty days [*Id.* ¶ 28]. T.J. Colony and Colony Park III assert that they were ultimately compelled to enter into a Forbearance Agreement on July 10, 2012, to avoid the foreclosures [*Id.* ¶ 29]. The Forbearance Agreement postponed the foreclosure sale until November 9, 2012 [Doc. 19-11 p. 5].

While the Forbearance Agreement states that the LLCs are the holders of the loan documents and parties to the agreement, T.J. Colony and Colony Park III submit that they believed they were entering this agreement with the Trusts because—based upon their recent correspondence concerning the properties at issue—they believed the Trusts were the holders of the loan documents [Doc. 19-11 pp. 1–2; Doc. 33-1 (Second Amended Counter-Complaint) ¶ 30–31]. Counter-plaintiffs contend that their belief is supported by the June 21, 2012, notices of trustees' sales issued by the Trusts, as well as the date upon which the Forbearance Agreement states that the lenders acquired their interest, which

4

was July 22, 2011, the date on which the Trusts were assigned the T.J. Colony deed of trust [Doc. 33-1 (Second Amended Counter-Complaint) ¶ 32–33]. In fact, counter-plaintiffs expressly allege that when the Forbearance Agreement was entered into, the LLCs were not the holders of the loan documents and had not acquired an interest in such [*Id.* ¶ 34]. As a result, counter-plaintiffs argue, the LLCs had neither the right to foreclose nor to enter into the Forbearance Agreement—and consequently, the LLCs provided no consideration as part of that agreement, rendering void any attempt by the LLCs to enforce it [*Id.* ¶¶ 35–37].

Regarding the intent of the Forbearance Agreement, counter-plaintiffs submit that the parties intended only that counter-plaintiffs would not contest that foreclosure proceedings would ensue if they failed to make payments in accordance with that agreement and did not intend to release all defenses as to the manner in which any foreclosure was conducted or to release all future causes of action arising based upon future conduct [*Id.* ¶¶ 38–40].

On July 27, 2012, LSREF2 Baron Trust 2011-2 executed a release of deed of trust as to the Colony Park III Property, which was recorded on August 3, 2012 [*Id.* ¶ 43]. Counter-plaintiffs allege that neither LSREF2 Baron Trust 2011-2 nor the LLCs obtained a judicial determination that this release of deed of trust could be rescinded [*Id.* ¶ 44]. Counter-plaintiffs did not make the payments due under the Forbearance Agreement by October 15, 2012 [Doc. 33-1 (Answer to First Amended Complaint) ¶ 50]. As a result,

foreclosure sales of the T.J. Colony and Colony Park III properties were conducted on November 9, 2012, in accordance with the Forbearance Agreement [*Id.* ¶ 38, 57].

Prior to the foreclosure sales, counter-plaintiffs allege that either the Trusts or the LLCs informed a competing bidder that "the lender" intended to bid up to the full amounts of the indebtedness, "thereby chilling the bidding[,]" and that to acquire the properties, the competing bidder would have to pay the full amount of the indebtedness plus the lender's attorneys' fees and expenses, which is uncommon for foreclosures in the Knoxville area [Doc. 33-1 (Second Amended Counter-Complaint) ¶¶ 45–46]. Furthermore, during the sale, either the Trusts or the LLCs informed a competing bidder that the bidder would have to pay the full purchase price in cash or certified funds by 5:00 p.m. on the day of the sale, a term not previously advertised or common in the Knoxville area [*Id.* ¶ 47]. Following the sale, that competing bidder stated that he could have bid higher if the funds had not been due in cash at 5:00 p.m. [*Id.* ¶ 48]. Those who attended the sale believed that the high bidder was an individual representing the Trusts [*Id.* ¶ 49]. More specifically, counter-plaintiffs allege that LSREF2 Baron Trust 2011 placed the winning bid on the T.J. Colony property and that LSREF2 Baron Trust 2011-2 placed the winning bid on the Colony Park III property [*Id.* ¶¶ 50–51].

On November 28, 2012, a substitute trustee's deed was recorded conveying the T.J. Colony Property to LSREF2 Baron Trust 2011 [*Id.* ¶ 52]. On the same date, a substitute trustee's deed was recorded conveying the Colony Park III property to LSREF2

Baron Trust 2011-2 [*Id.* ¶ 53].  The stated consideration in the deeds corresponded to the credit bids for the properties at the foreclosure sale [*Id.* ¶ 54].

In December 2012, an affidavit of scrivener's error was recorded attempting to correct the deed as to the T.J. Colony Property [*Id.* ¶ 55].  It states that the deed "incorrectly states that LSREF2 Baron Trust 2011 was the highest bidder at the foreclosure sale and is the New Owner.  The Substitute Trustee's Deed should be amended to replace all references to LSREF2 Baron Trust 2011 with LSREF2 Baron, LLC and name LSREF2 Baron, LLC as the New Owner" [*Id.*].  In April 2013, an amended affidavit of scrivener's error was recorded containing the signatures of LSREF2 Baron Trust 2011 and LSREF2 Baron, LLC, purporting to evidence the two entities' consent to the December 2012 affidavit [*Id.* ¶ 56].  Likewise, in December 2012, an affidavit of scrivener's error was recorded attempting to correct the deed as to the Colony Park III Property [*Id.* ¶ 57].  It states that the deed "incorrectly states that LSREF2 Baron Trust 2011-2 was the highest bidder at the foreclosure sale and is the New Owner.  The Substitute Trustee's Deed should be amended to replace all references to LSREF2 Baron Trust 2011 with LSREF2 Baron 2, LLC and name LSREF2 Baron 2, LLC as the New Owner" [*Id.*].  And in April 2013, an amended affidavit of scrivener's error was recorded containing the signatures of LSREF2 Baron Trust 2011-2 and LSREF2 Baron 2, LLC, purporting to evidence the two entities' consent to the December 2012 affidavit [*Id.* ¶ 58]. In addition, several months after the foreclosure sales, LSREF2 Baron Trust 2011-2, by and through its loan servicer, attempted to unilaterally rescind the July 27, 2012, release

7

of the Colony Park III deed of trust by recording a rescission of trust deed release [*Id.* ¶ 62].

Counter-plaintiffs allege that the LLCs were not the holders of the loan documents and had not been assigned the loan documents at the time of the foreclosure sales and that the LLCs are not in possession of the original loan documents [*Id.* ¶¶ 59–61]. It is worth noting that while the LLCs were parties to the Forbearance Agreement, the Notices of Substitute Trustee Sales for each property, which were drafted on July 5, 2012, at the earliest, state that the Trusts were assigned the loan documents in 2011, and thus "[the Trusts] ha[ve] demanded that the propert[ies] be advertised and sold in satisfaction of said debt and the cost of foreclosure, in accordance with the terms and provisions of the applicable Note and Deed of Trust [Doc. 33-2 p. 15; Doc. 33-3 p. 15].

Counter-plaintiffs also contend that the Trusts and the LLCs were required to have collection services licenses pursuant to the Tennessee Collection Services Act, Tenn. Code Ann. § 62-20-105(a), but lack such licenses [Doc. 33-1 (Second Amended Counter-Complaint) ¶¶ 64–67].

On the basis of these facts, counter-plaintiffs assert a cause of action for breach of contract and breach of implied covenant of good faith and fair dealing (Count 1), wrongful foreclosure (Count 2), and negligence and gross negligence (Count 3) [*Id.* ¶¶ 70–90]. They seek a determination that the foreclosures were wrongful and request compensatory damages, along with fees and expenses, among other relief. In response to the counter-complaint and first amended counter-complaint, the LLCs moved the Court

8

to dismiss all of the counter-claims against them [Docs. 20, 27]. Counter-plaintiffs then filed a motion to amend the first amended counter-complaint [Doc. 33], which the LLCs oppose on futility grounds [Doc. 35].

## II. Standards of Review

### A. Motion to Amend[3]

"[A] party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave," however, "when justice so requires." *Id.* Leave is appropriate "[i]n the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Leary v. Daeschner*, 349 F.3d 888, 905 (6th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 633 (6th Cir. 2009). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 807 (6th Cir. 2005) (citing *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980)).

---

[3] While the motions to dismiss were filed before the motion to amend, motions to amend shall be freely granted. Fed. R. Civ. P. 15. Moreover, granting a motion to dismiss before addressing a pending motion to amend can be an abuse of discretion. *Thompson v. Superior Fireplace Co.*, 931 F.2d 372, 374 (6th Cir. 1991).

9

### B.    Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) sets out a liberal pleading standard, *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004), requiring only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions."  *Twombly*, 550 U.S. at 555.  "[A] formulaic recitation of the elements of a cause of action will not do," nor will "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a Rule 12(b)(6) motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires th[is Court] to draw on its judicial experience and common sense."  *Id.* at 679.

10

## III.   Analysis

As grounds for dismissal, the LLCs assert that the Forbearance Agreement precludes counter-plaintiffs' claims and that, regardless, all of the claims fail to state a claim upon which relief can be granted.  In the motion to amend, counter-plaintiffs ask the Court to allow amendment of their claim for gross negligence [Doc. 33].  The LLCs oppose this request, asserting that the amendment would be futile [Doc. 35].  The Court must determine the validity of this assertion.

At the outset, the Court finds no indication of undue delay, bad faith, dilatory motive, or a repeated failure to cure deficiencies by amendments previously allowed on the part of counter-plaintiffs, and the Court does not find that undue prejudice to the LLCs will result from allowing the amendment.  Thus, absent futility, granting leave to amend the first amended counter-complaint is appropriate.  In determining whether the proposed Second Amended Counter-Complaint (the "Proposed Counter-Complaint") is futile, the Court must assess whether the LLCs' Rule 12(b)(6) motions to dismiss succeed in light of the Proposed Counter-Complaint.  Therefore, the Court is constricted in terms of the universe of documents it may consider.  More specifically:

> When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss *so long as they are referred to in the Complaint and are central to the claims contained therein.*

*Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)) (emphasis added).  This excludes

from consideration some of the documents in the record offered by the LLCs, including Documents 36-2, 36-3, and 36-4, which the LLCs offer as support for their contention that they were the holders and owners of the loan documents when the Forbearance Agreement was executed.

### A. Forbearance Agreement[4]

While the LLCs contend that the Forbearance Agreement bars counter-plaintiffs' claims, counter-plaintiffs assert that the LLCs were not the holders of the loan documents and lacked an interest in these documents at the time of the agreement. Thus, counter-plaintiffs argue, "the LLCs had no right to enforce the notes, to require the borrowers to enter the Forbearance Agreement, or to enter the Forbearance Agreement" [Doc. 33-1 (Second Amended Counter-Complaint) ¶¶ 34–35]. Accordingly, they claim that the LLCs gave no consideration as part of the Forbearance Agreement, rendering the agreement void to the extent that the LLCs attempt to assert it against counter-plaintiffs [*Id.* ¶¶ 36–37]. Furthermore, counter-plaintiffs submit that the LLCs were not the holders of the loan documents and had not been assigned the underlying promissory notes at the time of the foreclosure sales [*Id.* ¶¶ 59–60].

At this stage of the litigation, the Court must construe the Proposed Counter-Complaint in the light most favorable to counter-plaintiffs, accept all of its factual allegations as true, and draw all reasonable inferences in favor of counter-plaintiffs.

---

[4] The Forbearance Agreement is referred to in the Proposed Counter-Complaint and is central to counter-plaintiffs' claims, and therefore, the Court may properly consider it. *Bassett*, 528 F.3d at 430.

Therefore, while the Forbearance Agreement contains some factual assertions that undermine those in the Proposed Counter-Complaint [*See* Doc. 19-11], the Court must accept those in the Proposed Counter-Complaint as true. Counter-plaintiffs allege that the LLCs had no interest in, or the right to enforce, the loan documents at the time the Forbearance Agreement was executed. Consequently, for purposes of considering the pending motions, insofar as the LLCs attempt to assert the Forbearance Agreement against counter-plaintiffs, the Court views the Forbearance Agreement as invalid for lack of consideration on the part of the LLCs.

## B. Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing

Counter-plaintiffs allege that the LLCs breached their contractual obligations under the loan documents by breaching the implied covenant of good faith and fair dealing in a multitude of ways related to their exercise of their discretionary powers in conducting the foreclosure and foreclosure sale. In support of this claim, counter-plaintiffs state: "Because the deeds of trust and the loan agreements did not specify the standard of conduct to be followed in meeting obligations or in exercising discretionary rights under the contract, Tennessee law imposes an implied covenant of good faith and fair dealing into those contracts[,]" and the LLCs breached this covenant [Doc. 33-1 (Second Amended Counter-Complaint) ¶¶ 72–73]. Counter-plaintiffs add that this breach of the implied covenant is "intertwined with the breach of contract claim – by failing [to] perform under the auspices of the implied covenant, the LLCs breached the Loan Documents" [Doc. 34 p. 11].

In Tennessee, "[p]arties to a contract owe each other a duty of good faith and fair dealing as it pertains to the performance of a contract." *Barnes & Robinson Co. v. Onesource Facility Servs., Inc.*, 195 S.W.3d 637, 642 (Tenn. Ct. App. 2006) (citing *Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 686 (Tenn. 1996)); *Elliott v. Elliott*, 149 S.W.3d 77, 84–85 (Tenn. Ct. App. 2004). Importantly, however, "a breach of the implied covenant of good faith and fair dealing is not an independent basis for relief, but rather 'may be an element or circumstance of recognized torts, or breaches of contracts.'" *Upperline Equip. Co. v. J & M, Inc.*, 724 F. Supp. 2d 883, 892 (E.D. Tenn. 2009) (quoting *Solomon v. First Am. Nat'l Bank of Nashville*, 774 S.W.2d 935, 945 (Tenn. Ct. App. 1989) (discussing how "it does not appear that good faith, or the lack of it . . . standing alone, [is] an actionable tort")); *see also Envoy Corp. v. Quintiles Transnat'l Corp.*, No. 3:03cv0539, 2007 WL 2173365, at *8 (M.D. Tenn. July 26, 2007) (finding that "absent a valid claim for breach of contract, there is no cause of action for breach of an implied covenant of good faith and fair dealing").[5]

Here, counter-plaintiffs contend that the LLCs breached the loan documents by breaching the implied covenant of good faith and fair dealing. Thus, they effectively assert a stand-alone claim, that is, they seek relief based upon the LLCs' breach of the implied covenant and fail to assert a breach of contract independent of the alleged breach of the implied covenant. As mentioned, "[a] claim for the breach of the implied covenant

---

[5] Though the district court in *Envoy Corporation* was interpreting North Carolina law, the principles and reasoning involved are nonetheless persuasive in light of similar reasoning in *Solomon*, 774 S.W.2d 935.

14

of good faith and fair dealing does not provide an independent basis for relief and is, rather, a potential "element or circumstance of recognized torts, or breaches of contracts." *Solomon,* 774 S.W.2d at 945. Accordingly, the Court finds that counter-plaintiffs have not stated a plausible claim for relief on this basis and that the Proposed Complaint would consequently be futile. As a result, the Court will deny the motion to amend as it relates to this claim and dismiss this claim. *See AutoZone, Inc. v. Glidden Co.*, 737 F. Supp. 2d 936, 941–42 (W.D. Tenn. 2010) (stating that "when a proposed amendment would be futile because the cause of action cannot withstand a Rule 12(b)(6) motion to dismiss, courts may deny a motion to amend to assert or support that cause of action").

### C.     Wrongful Foreclosure

Counter-plaintiffs also allege that the LLCs committed wrongful foreclosure:

> [b]y violating Tennessee Code Annotated § 35-5-101, by failing to have authority to foreclose on the properties, by breaching the deeds of trust, and in particular as to the Colony Park III property, by foreclosing when that deed of trust had been released and there had been no judicial adjudication authorizing enforcement of any purported lien against that property.

[Doc. 33-1 (Second Amended Counter-Complaint) ¶ 76].

"While there are no specific elements for wrongful foreclosure, Tennessee courts generally examine whether contractual or statutory requirements were met in the foreclosure of the property in question." *Ringold v. Bank of Am. Home Loans*, No. 2:12-CV-02344-JPM, 2013 WL 1450929, at *6 (W.D. Tenn. Apr. 9, 2013). Counter-plaintiffs allege that the LLCs implicitly violated Tenn. Code Ann. § 35-5-101 by foreclosing on the T.J. Colony and Colony Park III properties despite lacking an enforceable interest in

these properties, and thus, the authority to foreclose. Taking counter-plaintiffs' allegations as true—as the Court presently must—the Court finds that counter-plaintiffs have stated a plausible claim for wrongful foreclosure. In other words, the Court concludes that if a party forecloses on property while lacking the authority to do so, such conduct plausibly constitutes wrongful foreclosure. Moreover, as to the Colony Park III property, counter-plaintiffs' wrongful foreclosure claim is bolstered by the Trusts' July 27, 2012, release of the Colony Park III deed of trust.

Accordingly, the Court will grant counter-plaintiffs' motion to amend as to the wrongful foreclosure claim, finding that the Proposed Counter-Complaint is not futile. The LLCs' motions to dismiss will accordingly be denied as moot with respect to this claim. *See Pethel v. Wash. Cnty. Sheriff's Office*, No. 2:06-799, 2007 WL 2359765, at *2 (S.D. Ohio Aug. 16, 2007) ("[B]ecause an amended complaint supersedes the original complaint, the filing of an amended complaint normally moots a motion to dismiss the original complaint.").

### D. Negligence and Gross Negligence

Counter-plaintiffs further allege that the LLCs were negligent and grossly negligent, arguing that "[b]y virtue of the Tennessee Collection Services Act ("TCSA"), the LLCs owed a duty of care to [counter-plaintiffs] to deal honestly and fairly in collection proceedings" [Doc. 33-1 (Second Amended Counter-Complaint) ¶ 83].[6]

---

[6] This Act is the only ground cited in the Proposed Counter-Complaint for finding a duty of care.

16

"The TCSA is a statute concerning licensing and oversight of 'collection services' by the 'Tennessee collection service board'" and a willful violation of the TCSA constitutes a misdemeanor. *Hunter v. Wash. Mut. Bank*, No. 2:08-CV-069, 2008 WL 4206604, at *6 (E.D. Tenn. Sept. 10, 2008) (citation omitted). But, "the statute does not expressly create a private cause of action[,]" and "research reveals no indication that a private right of action exists under the TCSA." *Id.* Counter-plaintiffs argue that while no private right of action exists under these statutes, they nevertheless create a duty by establishing the public policy of the state and a standard of conduct for collectors [Doc. 26 p. 13].

The Court finds that counter-plaintiffs have not shown that the TCSA creates a duty supporting a common-law negligence action. Therefore, the Court does not find that counter-plaintiffs have set forth a plausible claim for negligence. Although counter-plaintiffs argue that the fact that the TCSA does not create a private right of action does not foreclose the possibility that the TCSA creates a duty, the Court finds this argument unavailing. To find that the TCSA creates a duty would be tantamount to finding that it creates a private right of action because such a finding would require the Court to hold that a violation of the TCSA's provisions is grounds for a civil action. In sum, the Court finds that counter-plaintiffs have not set forth a plausible basis for concluding that the TCSA imposes a duty of care in the negligence context. Thus, as to this claim, the Court will deny counter-plaintiffs' motion to amend and grant the LLCs' motion to dismiss.

As for the gross negligence claim, counter-plaintiffs submit that the LLCs' "breach of the duty of care was also tantamount to gross negligence" because they "recklessly disregarded [counter-plaintiffs' rights and interests in the T.J. Colony and Colony Park III properties] with conscious indifference to the consequences and foreclosed on the properties without having any interest under the loan documents[,]" despite being aware of counter-plaintiffs' rights and interests [Doc. 33-1 (Second Amended Counter-Complaint) ¶¶ 86–88]. Yet, "[n]egligence, whether ordinary or gross, requires the breach of some duty owed to the injured party by the alleged tortfeasor." *Forsyth v. Bank of Am., N.A.*, No. 2:11-CV-191, 2013 WL 5203435, at *7 (E.D. Tenn. Sept. 16, 2013). In light of the Court's previous findings concerning whether the TCSA—the sole source of the duty alleged by counter-plaintiffs—creates a duty of care, the Court concludes that the Proposed Counter-Complaint does not state a plausible claim for gross negligence. Consequently, the Court finds that the amendments in the Proposed Counter-Complaint are futile with respect to counter-plaintiffs' gross negligence claim and will dismiss this claim.

### E. Discovery-related Requests

Counter-plaintiffs alternatively request that the Court allow discovery before ruling on the motion to dismiss, given what they term "the general disarray of the transaction documents, confusion as to ownership of the indebtedness and the interrelationships between the entities" [Doc. 26 p. 17]. The Court declines to grant this request, however, because "[t]he very purpose of Fed. R. Civ. P. 12(b)(6) is to enable

18

defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003) (citation and internal quotation marks omitted).

The LLCs ask that the Court stay discovery on the issues relating to counter-plaintiffs' counter-complaints pending resolution of the motions to dismiss. The Court will deny this request as moot.

## IV. Conclusion

For the reasons stated herein, counter-defendants' Motion to Dismiss Counter-Complaint [Doc. 20] will be **DENIED as moot**, counter-defendants' Motion to Dismiss First Amended Counter-Complaint [Doc. 27] will be **GRANTED in part** and **DENIED in part as moot**, and counter-plaintiffs' Motion to Amend First Amended Counter-Complaint and to File Second Amended Complaint [Doc. 33] will be **GRANTED in part** and **DENIED in part**. Counter-plaintiffs' request that the Court allow discovery before ruling on the motions to dismiss will be **DENIED**, and counter-defendants' request that the Court stay discovery pending resolution of the motions to dismiss will be **DENIED as moot**.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE